UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **WAYNE FLUDD**, | |
| Plaintiff, | |
| v. | Case No. 15-cv-01563 (CRC) |
| **COREY D. MITCHELL, et al.**, | |
| Defendant. | |

## MEMORANDUM OPINION

While serving a term of supervised release, D.C. Code offender Wayne Fludd was arrested on theft and drug-possession charges. This arrest triggered the eventual revocation of Fludd's supervised release. Before the revocation, however, Fludd had the right both to a preliminary hearing before a United States Parole Commission ("USPC") official to determine whether probable cause existed to believe that he had violated the conditions of his supervised release and to a subsequent revocation hearing to determine whether he had in fact violated those conditions. Fludd received both of these hearings—just many days late: Although federal regulations entitle D.C. Code offenders to a probable-cause hearing within 5 days of their arrest and a revocation hearing within 65 days, see 28 C.F.R. §§ 2.101(a), 2.102(f), Fludd did not receive his hearings until 54 days and 76 days, respectively, following his arrest. To make matters worse, Fludd claims, he was denied the opportunity to present mitigating evidence at his probable-cause hearing and was then not permitted to review the evidence on which the USPC relied at his revocation hearing.

Fludd now brings suit under 42 U.S.C. § 1983 against one parole commissioner and an array of identified and unidentified USPC employees, in both their official and individual capacities, alleging violations of his constitutional due-process rights and seeking compensatory

and punitive damages, a declaration that his rights were violated, and attorney's fees. Defendants have moved to dismiss Fludd's complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction on the ground that any suit for money damages against USPC officials in their official capacities is barred by sovereign immunity and under Rule 12(b)(6) on the ground that suits against those officials in their individual capacities are barred by either absolute or qualified immunity.  The Court agrees that Fludd's official-capacity claims are barred by sovereign immunity and that both absolute and qualified immunity preclude Fludd's claims against USPC officials in their individual capacities for the scheduling of his probable-cause and revocation hearings.  It will therefore dismiss those claims with prejudice.  The Court also concludes that the officials Fludd sues for alleged defects in his probable-cause and revocation hearing proceedings are protected for their actions by absolute immunity.  It will therefore dismiss that claim with prejudice as well.

## I.     Background

Wayne Fludd began serving a term of supervised release in January 2014, following his conviction and incarceration for attempted possession with intent to distribute cocaine. Compl. ¶¶ 5, 13.  In November of that year, Fludd was arrested in Prince George's County, Maryland for vehicle theft, possession of marijuana, possession of codeine without a prescription, and possession of counterfeit U.S. currency.  Id. ¶ 14; id. Ex. A, at 6.  Following that incident, in May 2015, Commissioner Charles Massarone signed a parole warrant for Fludd's arrest based on the recommendation of a USPC case analyst, Corey Mitchell, and a violation report prepared by Fludd's supervising officer, Sheri Dyer.  Compl. ¶¶ 6, 9–10, 15. The warrant instructed the U.S. Marshal executing it to "advise the Parole Commission . . . [when] the subject is in custody" and generally to "notify the Parole Commission promptly of all developments concerning the disposition of th[e] warrant."  Id. Ex. A.  On June 4, Fludd

presented himself to the U.S. Marshal's office in Greenbelt, Maryland, and was committed to the District of Columbia Central Detention Facility. Compl. ¶ 18.

On July 23—forty-nine days later— Sharonda Johnson, Fludd's partner and the mother of his two children, left phone and email messages with the USPC informing it that Fludd had not yet received a probable-cause hearing. Id. ¶ 20. That same day, a USPC employee—Tiffany Smith—responded to Johnson that Fludd's probable-cause hearing would be scheduled for the next week. Id. ¶ 21. Fludd ultimately received his probable cause hearing on July 28, five days following Johnson's messages. Id. ¶ 22. A USPC hearing officer—Sara Asbury Baca—presided over that hearing and determined there was probable cause to believe that Fludd had violated the terms of his supervised release. Id. ¶ 8. Fludd contends that he was not allowed to present mitigating evidence at this hearing. Id. ¶ 23. On August 10, Fludd was informed that his revocation hearing was scheduled for August 17. Id. ¶ 24. That hearing was then postponed until August 19, twenty-seven days following Johnson's messages. Id. ¶ 24–25. Fludd claims that, prior to the revocation hearing, he "was not permitted to review the evidence that the Commission relied on in making its revocation decision." Id. ¶ 25. Although he does not specify when he received the final decision revoking his supervised release, USPC records attached to Defendants' motion to dismiss indicate that the decision was issued on September 8, forty-seven days following Johnson's messages. Defs.' Mot. Dismiss Ex. C. Fludd was subsequently transferred from D.C.'s Central Detention Facility into the custody of the U.S. Marshals and ultimately into the custody of the U.S. Bureau of Prisons at its correctional facility in Cumberland, Maryland, where he remains today. Compl. ¶ 27.

II.     **Standard of Review**

Federal courts are courts of limited jurisdiction. On a Rule 12(b)(1) motion to dismiss, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). Subject-matter jurisdiction is a constitutional requirement that must be satisfied even if neither party raises an objection. See Akinseye v. Dist. of Columbia, 339 F.3d 970, 971 (D.C. Cir. 2003). A court may examine materials outside the pleadings as it deems appropriate in order to resolve the question of its jurisdiction. See Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000) (citing Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992)), aff'd, 2001 WL 135857 (D.C. Cir. Jan. 18, 2001).

A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be granted if the allegations in a complaint do not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although the Court must accept well-pleaded facts as true, legal assertions devoid of factual support are not entitled to this presumption. See Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

A motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine only if a reasonable fact-finder could find for the nonmoving party; a fact is material only if it is capable of affecting the outcome of the litigation. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Laningham v. U.S. Dep't of Navy, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In assessing a party's motion for summary judgment, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the . . .

motion.'" Scott v. Harris, 550 U.S. 372, 378 (2007) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)).

**III.   Analysis**

Although "Defendants do not concede that they have been properly served pursuant to [Federal Rule of Civil Procedure] 4(i) or that Plaintiff has satisfied his burden [to show] that this Court could properly exercise personal jurisdiction over the Defendants," Defs.' Mem. Supp. Mot. Dismiss 9 n.3, they have not briefed either of these issues or explained why service was improper or why personal jurisdiction does not lie.  As a result, the Court will proceed to analyze the defenses actually raised and argued—primarily, that sovereign immunity deprives the Court of jurisdiction over some of Fludd's claims and that absolute or qualified immunity requires other of his claims to be dismissed for failure to state a claim.

A.   Procedural Posture

Before proceeding to the merits of Defendants' motion, however, the Court must address the threshold question of how to treat the motion.  "In determining whether a complaint fails to state a claim, [a court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice." E.E.O.C. v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).  Yet "[w]hen, as here, on a Rule 12(b)(6) motion 'matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.'" Bowe-Connor v. Shinseki, 845 F. Supp. 2d 77, 85 (D.D.C. 2012) (quoting Fed. R. Civ. P. 12(d)).  "A motion may be treated as one for summary judgment even if the parties have not been provided with notice or an opportunity for discovery if they have had a reasonable opportunity to contest the matters outside of the pleadings such that they are not taken by surprise." Id. at 86.

As discussed below, Defendants premise their argument that the delay in holding Fludd's hearings was reasonable on the fact that they were not notified of Fludd's June 4 arrest until July 23, when Ms. Johnson contacted the USPC to inquire about the status of Fludd's probable-cause hearing. Fludd describes this inquiry in his complaint, see Compl. ¶ 21, but an email from a USPC employee—which Defendants attach to the motion to dismiss—provides crucial detail. According to that email, it appeared to the USPC that it had never "received notice of execution" of Fludd's arrest warrant and indicated that the U.S. Marshal's office in Greenbelt would try to locate the executed warrant and then submit it to the USPC. Defs.' Mot. Dismiss Ex. A. Because lack of notice is central to Defendants' qualified-immunity defense, and Defendants' exhibits provide the only basis for that claim, the Court must look outside the pleadings and treat the motion with regard to that issue as one for summary judgment under Rule 56. Fludd had the opportunity to question or contest Defendants' version of events in his opposition but did not do so. The parties thus should not be "taken by surprise," Bowe-Connor, 845 F. Supp. 2d at 85, by the Court's conversion of Defendants' motion into one for summary judgment on that issue. As a result, the Court finds that neither advance notice nor an opportunity for discovery is necessary. The Court will treat Defendants' motion to dismiss Counts One, Two, and Three on qualified-immunity grounds as a motion for summary judgment.

        B.      Fludd's Official-Capacity Claims

            1.      Commissioner Massarone

According to Fludd, Charles Massarone "is the Commissioner of the U.S. Parole Commission who signed Fludd's parole warrant on May 14, 2015." Compl. ¶ 10. Notably, "Fludd does not challenge . . . Massarone's role in the decision to revoke his parole." Pl.'s Opp'n Mot. Dismiss 7. Nor does Fludd "assert that . . . Massarone incorrectly determined that his parole should be revoked." Id. To the contrary, he labels Massarone's signing of the arrest

6

warrant "inconsequential" and claims that it had no "influence [on] Fludd's ultimate revocation decision." Id. Indeed, it appears that Fludd alleges no wrongdoing whatsoever by Massarone.

A reasonable reader might wonder, then, why he is named as a defendant at all. After all, when bringing a suit under § 1983, "a plaintiff must plead that each Government-official defendant, through the official's *own individual actions*, has violated the Constitution." Iqbal, 556 U.S. at 676 (emphasis added). Not only does Fludd fall short of this standard by failing to allege that Massarone acted improperly, but sovereign immunity would bar any action against him in his official capacity for money damages, see Ali v. U.S. Parole Comm'n, No. CIV.A.06 0235 (RCL), 2007 WL 902312, at *2 (D.D.C. Mar. 23, 2007) ("Sovereign immunity . . . bars plaintiff's § 1983 claims for monetary damages against [parole commissioners and hearing officers] in their official capacities."), and he would appear to be absolutely immune from suit for signing Fludd's arrest warrant when sued in his individual capacity, see Walrath v. United States, 35 F.3d 277, 282 (7th Cir. 1994) (holding a parole commissioner's act of signing an arrest warrant to be absolutely immune from suit because it "has several key characteristics in common with a judicial act: it involves the exercise of discretion in applying the law to the facts of a particular case, poses a heightened risk of vexatious litigation, and is 'open to correction through ordinary mechanisms of review.'" (quoting Forrester v. White, 484 U.S. 219, 227 (1988))).

In his opposition, Fludd clarifies that he "brings suit against . . . Massarone in his *official capacity* and [that he] seeks declaratory relief, as permitted under § 1983," not money damages. Id. at 6 (emphasis added). Fludd is correct that "[w]hen a Commissioner or Examiner of the United States Parole Commission is acting pursuant to his or her authority under the D.C. Revitalization Act, he or she is acting under color of a statute of the District of Columbia and, therefore, is subject to suit in his official capacity for *prospective* . . . declaratory relief under 42 U.S.C. § 1983." Anderson v. Reilly, 691 F. Supp. 2d 89, 92 (D.D.C. 2010) (emphasis added).

7

Fludd, however, seeks no prospective relief. He simply asks for a backward-looking declaration that the process afforded to him during his probable-cause and revocation hearings was "untimely and legally insufficient." Compl. ¶ 55(C). True, courts have sometimes held that a plaintiff "may seek a retrospective declaratory judgment [when his] claims are 'intertwined with a claim for monetary damages that requires [the Court] to declare whether a past constitutional violation occurred.'" Bunn ex rel. Coleman v. Dist. of Columbia, 306 F.R.D. 68, 75 (D.D.C. 2015) (second alteration in original) (quoting Lippoldt v. Cole, 468 F.3d 1204, 1217 (10th Cir. 2006)). But because sovereign immunity prevents Fludd from pursuing a claim for money damages against Massarone in his official capacity (or against the Commission itself),[1] it also precludes him from seeking a retrospective declaratory judgment that is inextricably linked to that claim. Fludd thus fails to meet his "burden of 'overcom[ing] the defense of sovereign immunity," which he must do "to establish the jurisdiction necessary to survive a Rule 12(b)(1) motion to dismiss." Ray v. Smoot, No. CV 15-0629 (ABJ), 2016 WL 916366, at *2 (D.D.C. Mar. 10, 2016) (quoting Jackson v. Bush, 448 F. Supp. 2d 198, 200 (D.D.C. 2006)). Accordingly, the Court will dismiss with prejudice Fludd's official-capacity claims against Massarone under Rule 12(b)(1) for lack of subject-matter jurisdiction.

### 2. Other "J. Doe" Defendants

In addition to suing Massarone in his official capacity, the caption of Fludd's complaint states that he is suing other "J. Doe" employees of the USPC in their official capacities as well.

---

[1] A suit against Massarone in his "official capacity as [a] Parole Commission [member] amounts to a suit against the" USPC itself, Ray v. Smoot, No. CV 15-0629 (ABJ), 2016 WL 916366, at *2 (D.D.C. Mar. 10, 2016), which is not subject to liability under § 1983, Settles v. U.S. Parole Comm'n, 429 F.3d 1098, 1105–06 (D.C. Cir. 2005).

Because sovereign immunity shields USPC employees from suits for money damages when sued in their official capacities, see, e.g., Ali, 2007 WL 902312, at *2, the Court will dismiss with prejudice Fludd's official-capacity claims against any unidentified "J. Doe employees" under Rule 12(b)(1) for lack of subject-matter jurisdiction.

        C.        Individual-Capacity Claims

While his complaint is unclear on this point, Fludd clarifies in his opposition that he "sues all Defendants, with the exception of Defendant Massarone, in their individual capacities for money damages as permitted by § 1983." Pl.'s Opp'n 4. "Section 1983 provides for recovery against any person who depriv[es a] plaintiff of a constitutional right 'under color of any statute . . . of any State or Territory or the District Columbia,' including 'any Act of Congress applicable exclusively to the District of Columbia.'" Fletcher v. Dist. of Columbia, 370 F.3d 1223, 1227 (D.C. Cir. 2004) (quoting 42 U.S.C. § 1983), judgment vacated on reh'g on other grounds, 391 F.3d 250 (D.C. Cir. 2004). The statute is an appropriate vehicle for Fludd's claims "because although the USPC is a federal entity, Congress"—through a law known as the D.C. Revitalization Act—"required it to 'assume the jurisdiction and authority of the Board of Parole of the District of Columbia . . . in the case of any imprisoned felon who is eligible for parole or reparole under the District of Columbia Code.'" Stoddard v. U.S. Parole Comm'n, 900 F. Supp. 2d 38, 40 (D.D.C. 2012) (quoting National Capital Revitalization and Self–Government Improvement Act of 1997, Pub. L. No. 105–33, § 11231, codified at D.C. Code § 24–131(a)(1)). Thus, USPC employees act under color of District of Columbia law when dealing with D.C. Code violators and, when they do, "are amenable to suit under § 1983 in . . . their individual capacities." McIntyre v. Fulwood, 892 F. Supp. 2d 209, 216 (D.D.C. 2012) (citing Fletcher, 370 F.3d at 1227).

9

As noted above, Fludd brings suit against these defendants in their individual capacities, seeking to recover for four claimed violations of his constitutional due-process rights: failing to provide a timely probable-cause hearing (Count One); failing to provide a timely revocation hearing (Count Two); failing to provide a timely revocation decision (Count Three); and denying him the opportunity to present witnesses or documentary evidence at his probable-cause hearing and failing to disclose the evidence against him prior to his revocation hearing (Count Four). The Court will consider the first three counts together before proceeding to the fourth count, but will begin by considering Fludd's claims against three defendants whom he does not allege violated his rights.

1. <u>Defendants Tiffany Smith, Sheri Dyer, and Corey Mitchell</u>

Fludd names three defendants—Tiffany Smith, Sheri Dyer, and Corey Mitchell—as to whom he alleges no wrongdoing. According to Fludd, "Smith is an employee of the Commission and is the individual who responded to [the] July 23, 2015, inquiry regarding the delay of his probable cause hearing." Compl. ¶ 7. Fludd asserts that she "responded by telephone to Ms. Johnson's voicemail message and informed her that Fludd's probable cause hearing would be scheduled for the week of July 27, 2015." Id. ¶ 21. Fludd does not claim that she was responsible for ensuring an earlier hearing or that she acted improperly in response to Johnson's message. In short, he does not claim that Smith violated any of his constitutional rights. Additionally, Fludd explains that Sheri Dyer "is a Community Supervision Officer with . . . the federal agency tasked with supervising D.C. Code Offenders on parole and probation," describing her as his "assigned supervising officer" and alleging that "[s]he prepared the violation report that precipitated the issuance of the Commission's parole warrant." Id. ¶ 9. Corey Mitchell "is a Case Analyst with the [USPC]," who "authored Fludd's memorandum and warrant application and recommended that the Commission issue a parole warrant." Id. ¶ 6. Yet

10

Fludd challenges no aspect of this warrant or the process leading up to its issuance. He complains only of the timeliness of his probable-cause and revocation hearings and the process he was afforded in those hearings.

As a result, Fludd "has not alleged facts in either the complaint or his opposition establishing [these defendants'] *personal involvement* in the challenged action." Ray, 2016 WL 916366, at *2 (emphasis added). In "§ 1983 suits, a plaintiff must plead that *each* Government-official defendant, through the official's *own individual actions*, has violated the Constitution." Iqbal, 556 U.S. at 676 (emphasis added). Fludd plainly has not done so with regard to Smith, Dyer, or Mitchell and thus has not stated any claim against any of those defendants in their individual capacities.

### 2. The Timeliness of Fludd's Hearings and Revocation Decision

Fludd does not indicate who at the USPC, through their individual actions, deprived him of his right to receive a probable-cause hearing, revocation hearing, and final revocation decision within a reasonable period of time. Regardless, any official involved in scheduling these hearings or issuing that decision is protected by both absolute and qualified immunity. As a result, the Court will dismiss Fludd's complaint with prejudice as to Counts One, Two, and Three of the complaint.

#### i. Absolute Immunity

Absolute "[q]uasi-judicial immunity . . . is a complete bar to any lawsuit against a government official based on tasks the official performed that were within the scope of his duties" if those tasks meet certain requirements. Pate v. United States, 277 F. Supp. 2d 1, 7 (D.D.C. 2003) (citing Wagshal v. Foster, 28 F.3d 1249, 1252 (D.C. Cir. 1994)). The premise for this grant of immunity is "the theory that '[w]hen officials are threatened with personal liability for acts taken pursuant to their official duties, they may well be induced to act with an excess of

caution or to otherwise skew their decisions in ways that result in less than full fidelity to the objective and independent criteria that ought to guide their conduct.'" Id. (alteration in original) (quoting Forrester v. White, 484 U.S. 219, 223 (1988)).  The D.C. Circuit has

> distilled the Supreme Court's approach to quasi-judicial immunity into a consideration of three main factors: (1) whether the functions of the official in question are comparable to those of a judge; (2) whether the nature of the controversy is intense enough that future harassment or intimidation by litigants is a realistic prospect; and (3) whether the system contains safeguards which are adequate to justify dispensing with private damage suits to control unconstitutional conduct.

Wagshal, 28 F.3d at 1252.

Defendants do not argue the point, but Fludd himself directs the Court to an opinion by Judge Walton applying this analysis to hold that a parole-board member sued in her individual capacity for money damages under § 1983 "would be entitled to absolute immunity for her alleged failure to timely schedule [a] plaintiff's parole revocation hearing." Pate, 277 F. Supp. 2d at 11; see also Pl.'s Opp'n Defs.' Mot. Dismiss 4.  In so holding, the Court found the "function of scheduling a revocation hearing [to be] integral to the judicial process, and thus entitled to absolute immunity."  Id. at 9; see also Thompson v. Duke, 882 F.2d 1180, 1185 (7th Cir. 1989) ("If scheduling a [parole violation] hearing is not a part of an adjudicatory or judicial function, then an action could be maintained against a judge for injuries to an incarcerated defendant resulting from the judge's alleged failure to schedule a hearing or trial within an applicable speedy trial limitations period, or the judge's alleged failure to conduct a hearing or trial on the date scheduled.").  Fludd does not contend that Pate was wrongly decided, nor does he make any attempt to distinguish it.  Consistent with Pate, the Court concludes that scheduling probable-cause and revocation hearings are quasi-judicial acts protected by absolute immunity under Wagshal.  Fludd therefore may not seek money damages against any Commissioners or

USPC employees for failing to timely schedule his probable-cause hearing or his revocation hearing.

### ii. Qualified Immunity

Even if the various "J. Doe" employees responsible for scheduling Fludd's hearings were not absolutely immune from suit for their actions in this regard, the Court finds that they would be entitled to qualified immunity on the facts of this case and would grant summary judgment on that basis. "The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he [was] doing violates that right.'" Id. (quoting Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012)). Therefore, "while 'a case directly on point' is not required, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" Spencer v. Dist. of Columbia, No. 14-CV-01541 (CRC), 2016 WL 927141, at *4 (D.D.C. Mar. 4, 2016) (quoting id.). Because Fludd has not alleged a colorable constitutional violation by any USPC employee, qualified immunity applies.

As a detainee accused of violating the terms of his supervised release, Fludd had the right to receive a probable-cause hearing "as promptly as convenient after [his] arrest." Morrissey, 408 U.S. at 485. He also had a corresponding right to receive a revocation hearing "within a reasonable time after [he was] taken into custody." Id. Moreover, the Supreme Court has stated that "[a] lapse of two months, as . . . occurs in some cases, would not appear to be unreasonable." Id. The applicable regulations effectuating that right "state that '[a] supervised releasee who is retaken and held in custody in the District of Columbia on a warrant issued by the Commission,

13

and who has not been convicted of a new crime, shall be given a probable cause hearing by an examiner of the Commission no later than five days from the date of such retaking.'" Vactor v. U.S. Parole Comm'n, 815 F. Supp. 2d 81, 83 (D.D.C. 2011) (citing 28 C.F.R. § 2.214(a)). Then, "if probable cause is found, 'the examiner shall schedule a final revocation hearing to be held within 65 days of the releasee's arrest." Id. "The final decision following a local revocation hearing shall be issued within 86 days of the retaking of the releasee on a supervised release violation warrant." 28 C.F.R. § 2.218. A delay beyond the specified time periods is not a *per se* constitutional violation, however, for the touchstone in each inquiry is whether the lapse in time is reasonable under the circumstances. See Morrissey, 408 U.S. at 485.

Defendants have introduced evidence, which Fludd does not contest, that (1) the U.S. Marshal for the District of Maryland never informed the USPC that it had executed Fludd's arrest warrant, despite the USPC's instruction to the Marshal to "advise the Parole Commission . . . [when] the subject is in custody," Defs.' Mot. Dismiss Ex. A; (2) USPC employees, as soon as they were informed that Fludd was in custody, acted to schedule a probable-cause hearing and set it for July 28, 2015—five days from the date they were put on notice; (3) USPC employees then scheduled an expedited revocation hearing, which ultimately took place on August 19, 2015; and (4) the USPC issued its final decision on September 8, 2015, Defs.' Mot. Dismiss Ex. C. It thus would have been impossible for any UPSC employee to schedule Fludd's probable-cause hearing to take place within five days of his arrest, given that the Commission was not notified that Fludd was in custody until much later. Moreover, Fludd does not claim that any USPC employees acted improperly with regard to scheduling his hearings after they were put on notice of his custodial status. After all, it is undisputed that they took immediate action at that point to schedule a probable-cause hearing (which was held 5 days following the notice), expedited the scheduling of a revocation hearing (which was held 22 days

14

following the notice), and issued a final revocation decision (which occurred 42 days following the notice).

Fludd nonetheless claims that certain USPC employees should be personally liable for the fact that his hearings took place outside the prescribed timeframes.  For him to prevail against any USPC defendants, though, it must be the case that reasonable officials at the UPSC involved in scheduling probable-cause hearings would have known that they were violating detainees' right to procedural due process by failing to schedule hearings for individuals of whose custody they were unaware.  See Reichle, 132 S. Ct. at 2093.  In the absence of any case law supporting this position, and applying principles of common sense, the Court concludes that a parole-commission employee does not personally violate a detainee's right to procedural due process by failing to schedule a probable-cause hearing before she or any other commission employee is on notice that the parolee has been taken into custody.  Qualified immunity therefore shields all "J. Doe" defendants at the USPC from suit for money damages under § 1983 arising out of Fludd's claim that they did not hold his probable-cause hearing soon enough.  The same is true of his revocation hearing, which was expeditiously held approximately three weeks following the probable-cause hearing, and the final revocation decision, which was issued approximately three weeks following the revocation hearing.

      3.  Fludd's Right to Present Evidence in His Favor and Review Evidence Against Him

        i.  The Probable-Cause Hearing

Fludd challenges as insufficient the process he was afforded during the probable-cause hearing itself.  As part of this challenge, he names as a defendant Sara Absury Baca, the "employee of the Commission and the hearing examiner who presided over Fludd's probable cause hearing."  Compl. ¶ 23.  Although Fludd's complaint is styled largely in the passive voice,

he appears to allege that Baca was personally involved in denying him the opportunity "to present mitigating evidence," id., and apparently that she prevented him from "present[ing] witnesses and documentary evidence on his behalf that would mitigate the violations charged against him," id. ¶ 51 (Count Four).  In response, Defendants contend only that Fludd was not entitled to the process he claims was due.  Defs.' Mem. Supp. Mot. Dismiss 18–19. (citing Vactor, 815 F. Supp. 2d at 84 ("At the probable-cause stage, the inquiry is merely whether sufficient evidence exists to 'hold the parolee for the final decision of the parole board on revocation.'")).

Defendants' position contravenes the Supreme Court's directive that, at the probable-cause "hearing[,] the [detained individual] may appear and speak on his own behalf; [and] *he may bring letters, documents, or individuals* who can give relevant information to the hearing officer."  Morrissey, 408 U.S. 471, 487 (1972) (emphasis added).  District of Columbia regulations also explicitly contemplate that an individual in Fludd's position may present "witnesses on his behalf" at his probable-cause hearing and allow him to request a postponement of the hearing in order to do so.  28 C.F.R. § 2.101(b).  Contrary to Defendants' argument, then, if Fludd was denied the ability to present relevant documents or to bring witnesses with relevant information, the process afforded him at his probable-cause hearing fell below the "minimum requirements of due process" as laid out in Morrissey, 408 U.S. at 489.

Fludd's claim nonetheless falters because he challenges decisions by Baca that are "integral to [her] duties as [a] hearing examiner, surely the kind that could subject [her] to harassment or intimidation by parolees, and are subject to administrative and judicial review to safeguard against unconstitutional conduct."  Harris v. Fulwood, 989 F. Supp. 2d 64, 73 (D.D.C. 2013) (holding a USPC hearing examiner absolutely immune from suit for violating a parolee's due-process rights by denying him the ability to confront and cross-examine adverse witnesses

during a revocation hearing), aff'd on other grounds, 611 F. App'x 1 (D.C. Cir. 2015). Baca's conduct in this regard is therefore "protected by absolute quasi–judicial immunity." Id.; see also Nelson v. Williams, 750 F. Supp. 2d 46, 52 n.7 (D.D.C. 2010) (denying as futile a motion to amend a complaint to add a USPC hearing examiner as a defendant on the ground that he "would be protected by absolute quasi-judicial immunity"), aff'd, No. 10-5429, 2011 WL 2618078 (D.C. Cir. 2011). The Court will therefore dismiss Count Four of Fludd's complaint with prejudice as to the claimed violation of due process at his probable-cause hearing.

### ii. The Revocation Hearing

Fludd's claim that unknown USPC employees denied him due process at or prior to his revocation hearing suffers from the same defect. At a revocation hearing, a "parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation." Morrissey, 408 U.S. at 488. Under the regulation applicable here:

> *All evidence upon which a finding of violation may be based shall be disclosed to the alleged violator before the revocation hearing.* Such evidence shall include the Community Supervision Officer's letter summarizing the parolee's adjustment to parole and requesting the warrant, all other documents describing the charged violation or violations of parole, and any additional evidence upon which the Commission intends to rely in determining whether the charged violation or violations, if sustained, would warrant revocation of parole.

28 C.F.R. § 2.103 (emphasis added). Fludd alleges that unidentified "J. Doe" employees did not permit him "to review the evidence that the Commission relied on in making its revocation decision"—a violation of his right to due process. Compl. ¶ 25; see also id. at 53 ("Defendants failed to disclose evidence of Fludd's charged parole violations . . . ."). Defendants respond only that the facts show that Fludd "received notice of the evidence upon which the Commission intended to rely at the revocation hearing." Def.'s Mem. Supp. Mot. Dismiss 19. Regardless of whether Defendants are correct about what the facts may reveal, the Court finds that decisions

regarding what information to disclose to Fludd in preparation for his revocation hearing are also protected by absolute quasi-judicial immunity.  See Harris, 989 F. Supp. at 73.  The Court will, therefore, also dismiss Count Four of Fludd's complaint with prejudice as to the claimed violation of due process at his revocation hearing.

## IV.     Conclusion

For the foregoing reasons, the Court will dismiss all claims in Fludd's complaint with prejudice.

CHRISTOPHER R. COOPER
United States District Judge

Date:   April 20, 2016